IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-02216-MSK-MEH

FERDINAND DE LEON,

    Plaintiff,

v.

IMELDA R. MARCOS;
FERDINAND R. MARCOS; and
DENMAN INVESTMENT CORPORATION, INC.,

    Defendants.
_____

# CORRECTED[1] OPINION AND ORDER GRANTING MOTION TO DISMISS
_____

**THIS MATTER** comes before the Court pursuant to Defendant Denman Investment Corporation, Inc.'s ("Denman") Motion to Dismiss or to Stay **(# 11)**, the Plaintiff's response **(#22)**, and Denman's reply **(# 27)**.

# FACTS

The operative facts for purposes of the instant motion are undisputed. The Plaintiff is the named representative of a class that holds a judgment [2] of almost $2 billion against former

---

[1] This Opinion corrects an omission that was included in the original version of this Order found on the Court's docket. The original version is thus withdrawn in favor of this corrected version.

[2] In other proceedings, other members of the class have appeared as the named representative. The Court uses the term "Plaintiff" in this Opinion to refer to any proceedings by any person on behalf of the class, regardless of the named representative.

1

Philippines President Ferdinand Marcos.[3] The judgment was entered on February 3, 1995, by the United States District Court for the District of Hawaii. In this action, the Plaintiff seeks to collect against certain Colorado real property which, although nominally titled in the name of Defendant Denman, the Plaintiff contends is an asset of Mr. Marcos' estate. The primary relief sought by the Plaintiff is the quieting of title to that property in the estate's name and then the execution of the judgment against that property. Denman moves to dismiss this action on the grounds that the Plaintiff's judgment is no longer enforceable.

In January 1997, the Plaintiff registered the Hawaii judgment in Illinois, pursuant to 28 U.S.C. § 1963, but commenced no efforts to enforce it there. On or about February 3, 2005, the Hawaii judgment expired by operation of Hawaii law. Hi. Rev. Stat. § 657-5.

In April 2005, the Plaintiff registered the Hawaii judgment in Colorado and Texas and commenced suits similar to this one, seeking to execute the judgment against certain real property in those jurisdictions. In or about June 2006, when the defendant in the Texas action raised an argument that the Hawaii judgment had expired, the Plaintiff returned to the District of Hawaii, requesting that the judgment be extended. The District Court extended the judgment for another ten years under the Hawaii statute, but on appeal, the 9th Circuit reversed that ruling, finding that Hawaii law deemed the judgment "extinguished" on or about February 3, 2005 and that any request to extend it had to be brought <u>prior</u> to that date. *In re Estate of Ferdinand E. Marcos Human Rights Litigation*, 536 F.3d 980, 990 (9th Cir. 2008). As a result of that ruling, the Hawaii judgment itself was extinguished.

---

[3]As former President Marcos is deceased, the Plaintiff now has a judgment against his estate.

Having no enforceable Hawaii judgment, the Plaintiff then turned to the registered judgment in Illinois. By operation of Illinois law, a judgment registered becomes dormant seven years after registration and must be "revived" by the judgment creditor. 735 Il. Comp. Stat. 5/12-108(a). However, once revived, a judgment in Illinois remains effective for a period of 20 years from the date entry of that judgment. 735 Il. Comp. Stat. 2/1602(a). The Plaintiff petitioned the United States District Court for the Northern District of Illinois to revive that judgment, and on September 4, 2008, the court granted that request, directing the Clerk of the Court to "enter this revived judgment pursuant to FRCP 58."

The crux of the issue before this Court concerns the effect of the registration of the Hawaii judgment in Illinois and the revival of that judgment by the District Court. The Plaintiff contends that the registration of the Hawaii judgment in Illinois created a wholly new judgment that was enforceable and revivable under Illinois law. Viewed in that light, the Plaintiff contends that the Illinois judgment is not derivative in nature, but an independent judgment that can be registered in other jurisdictions despite the expiration of the Hawaii judgment (and, by extension, its registration in each new jurisdiction creates a new, separately-enforceable judgment). Denman contends that the timely registration of the Hawaii judgment in Illinois allows the Plaintiff to enforce that judgment in Illinois, but does not create (or allow the creation of) a new Illinois judgment that can be "re-registered" and enforced in other jurisdictions.

This precise issue was considered in proceedings involving the Plaintiff before the United States District Court for the Northern District of Texas. In *Del Prado v. B.N. Development Co.*, D. N.D. Tx. Case No. 4:05-cv-234-Y (N.D. Tx. Jan. 9, 2009) (slip op.), the court granted the defendant's motion to dismiss the Plaintiff's suit, rejecting the Plaintiff's argument that 28

3

U.S.C. § 1963 operates to create a new, independent judgment upon the registration of a foreign judgment. On appeal, the 5th Circuit disagreed, finding that registration of a judgment under § 1963 created a new judgment that "had all of the attributes of a judgment rendered by the [jurisdiction of registration]," that, in turn "may be re-registered" in other jurisdictions. *Del Prado v. B.N. Development Co.*, 602 F.3d 660, 667 (5th Cir. 2010).

## ANALYSIS

**A. Standard of review**

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). The Court must limit its review to the four corners of the Complaint, but may also consider documents attached to the Complaint as exhibits, *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001), as well as unattached documents which are referred to in the Complaint and central to the plaintiff's claim, so long as the authenticity of such documents is undisputed. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

Here, the Plaintiff objects to Denman's submission of certain extraneous material in

support of its motion. As the following discussion reveals, the only extraneous material the Court has considered with regard to this matter are the contents of filings by the Plaintiff in the Northern District of Illinois. Whether the Court takes note of these pleadings as a result of judicial notice, *see Continental Coal, Inc. v. Cunningham*, 511 F.Supp.2d 1065, 1071 (D.Kan. 2007) (court may take judicial notice of pleadings filed in other cases on Rule 12 motion), or whether the Court reasons that the pleadings themselves are merged into the Illinois judgment, which in turn is attached to the Complaint in this action as proof of the Plaintiff's assertion that that judgment has been registered in this Court, is immaterial; in either instance, the Court finds it appropriate to consider those documents on a Rule 12 motion.

**B. Merits**

Much of Denman's original motion – filed after the Northern District of Texas' ruling in *Del Prado* but before the ruling of the 5th Circuit – concerns questions of collateral estoppel and is no longer viable. The only question requiring consideration in this case is the same one faced by the Northern District of Texas and the 5th Circuit: does registration of a judgment pursuant to 28 U.S.C. § 1963 create a wholly new judgment that can, in turn, be re-registered to create wholly new judgments in other jurisdictions?

This issue appears to be one of first impression in the 10th Circuit. Consequently, the Court has carefully considered the reasoning of Northern District of Texas, the 5th Circuit, and the various authorities cited by the parties. For the reasons that follow, this Court respectfully respectfully disagrees with the 5th Circuit's reasoning. This Court concludes that only an original judgment, issued by a court upon the substantive merits of an adversarial dispute, can be registered pursuant to 28 U.S.C. § 1963, and it cannot be registered once it is extinguished under

5

the law of the jurisdiction where it was entered. A judgment created by registration (a "registered judgment") is enforceable in jurisdiction where it is registered in accordance with the law of that jurisdiction, but it cannot be subsequently "re-registered" in other jurisdictions. In this case, the rule that this Court finds proper would allow the Plaintiff to enforce his registered judgment in Illinois, but because the original Hawaii judgment has been extinguished before it was registered elsewhere, the Plaintiff cannot register or enforce any judgment outside of Illinois.

The Court begins with the fundamental legal axiom that a judgment is "the final determination of an action," that embodies a court's adjudication of "a claim pressed and resisted (or the opportunity for resistance) by adversaries". Wright & Miller *et al*, Federal Practice and Procedure, Civil 3d Ed., § 2651, *quoting In the Matter of Fidelity Tube*, 167 F.Supp. 402, 404 (D.N.J. 1958); *see also* Am. Jur. (2d Ed.) Judgments, § 1 ("It is the final decision of the court, resolving the dispute and determining the rights and obligations of the parties, and the law's last word in a judicial controversy"). Enforcement of a judgment entered by a federal court is constrained both by federal law and by the law of the jurisdiction where it is entered. Fed. R. Civ. P. 69(a)(1).

When a judgment creditor desires to enforce a federal court judgment in a jurisdiction other than the one where it is entered, it may do so in accordance with 8 U.S.C. § 1963, which provides:

> A judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered by filing a certified copy of the judgment in any other district . . . A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced

6

in like manner.

*Id.*

The major point of contention between the parties is the meaning of the last quoted sentence, which provides that a registered judgment shall have "the same effect" and "may be enforced in like manner" as a judgment that originated in that jurisdiction. Before delving into their arguments as to the meaning of the second sentence, the Court pauses to observe the importance of reading the final sentence in conjunction with the first sentence of the statute – that which specifies what judgment can be registered. It authorizes registration of a "judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade . . . ." This language anticipates two requirements - that a judgment has been <u>entered</u> by a court (as compared to a "judgment" that comes into effect by being registered), and that it be entered in an action <u>for the recovery or money or property</u> ( in essence, reflecting the adjudication of a claim for tangible, not simply declaratory, relief). This language is consistent with the fundamental nature of a judgment - a document reflecting the determination of a claim on its merits. It is not, however, consistent with a registered judgment, which is simply the perfection of an existing judgment in another jurisdiction so as to permit foreign enforcement. Interpreted in this way, the statute would appear to provide that only an original judgment resolving an adversarial proceeding for tangible relief can be registered in another jurisdiction.

Once registered, the question is what attributes the registered judgment has. The seminal case grappling with this issue is *Stanford v. Utley*, 341 F.2d 265 (8th Cir. 1965).[4] There, the

---

[4] *Sanford* receives much of its reverence because its author, Judge Blackmun, later became Chief Justice of the U.S. Supreme Court.

plaintiff obtained a money judgment against the defendant in Mississippi on April 25, 1956, and the next day registered the judgment in Missouri pursuant to 28 U.S.C. § 1963. Seven or more years later, after the Mississippi judgment expired under Mississippi law, the plaintiff sought leave to take a deposition of the defendant/judgment debtor in Missouri (where judgments live to a riper old age) in order to discover the location of assets. The court identified the issue presented as:

> whether a federal judgment creditor is entitled to enforcement in a sister state when his judgment is registered in the sister state within the judgment state's limitation period but enforcement is sought later at a time within the registration state's own limitation period but after the expiration of the period of limitations of the judgment state.

341 F.2d at 266.

The court noted that legislative history provided no guidance as to how Congress intended the last sentence of § 1963 to apply in such circumstances. *Id.* at 268. Observing that §1963 is "more than 'ministerial'" and more than "a mere procedural device for the collection of the foreign judgment," the court stated that "We feel that registration provides, so far as enforcement is concerned, the equivalent of a new judgment of the registration court." *Id.* "In other words," it explained, "for enforcement purposes, the Missouri federal registration equated with a new Missouri federal judgment on the original Mississippi federal judgment [that is] no different than a judgment timely obtained by action in Missouri federal court on that Mississippi judgment." *Id.* Concluding that the Missouri-registered judgment should expire when instructed by Missouri law, notwithstanding its Mississippi roots, the *Stanford* court explained that "to have it expire with the foreign judgment[ ] would give the words of the statute a lesser status than their plain meaning and to make registration something far inferior to a judgment on a

8

judgment."[5] *Id.* at 270.

*Stanford* took pains to ensure that its holding would be limited to the specific facts of the case. The court observed the potential for "problems attendant upon [the] broader aspect of the statute," but noted that these issues "are not now before us[; w]e are concerned here only with the registration's having the same effect as a money judgment for the purpose of <u>enforcement in the registration court</u>." *Id.* at 270 (emphasis added). In addition, the court noted that "§ 1963 presents much to be answered in the future," and reeled off a string of hypothetical questions, including "[i]s a registered judgment itself subject to registration elsewhere?" *Id.* at 271. "The presence of these and undoubtedly many other questions," the court cautioned, "prompts us to emphasize that the conclusion we reach here is one having application to the fact situation of this case. We do not now go so far as to say that registration effects a new judgment in the registration court for every conceivable purpose; nor do we say that it fails to do so for any particular purpose." *Id.*

Such careful limitation in the holding of *Stanford* was not recognized in the 5th Circuit's recent decision in *Del Prado*. It cited *Stanford* and other cases (which will be discussed shortly), for a broader proposition that "a registered judgment is equivalent to a new federal judgment." 602 F.3d at 666, *citing Stanford*, 341 F.2d at 269-70. It appears that the 5th Circuit overlooked the reasoning of *Stanford*, particularly that limitation of its holding to the fact that a registered judgment resembled an independent federal judgment for purposes of <u>enforceability</u> in the

---

[5]The phrase "judgment on a judgment" requires some explanation. Prior to the 1948 passage of 28 U.S.C. § 1963, there was no simple means for a judgment creditor to enforce his judgment in a foreign jurisdiction. His only remedy was to "bring suit in the other federal district court and obtain a new judgment of the second court," or a "judgment on a judgment." *Home Port Rentals, Inc. v. International Yachting Group, Inc.*, 252 F.3d 399, 404 (5th Cir. 2001).

9

jurisdiction where it had been registered. In this oversight, *Del Prado* fails to give deference to *Sanford's* rationale - that the <u>enforcement</u> of domestic and registered judgments should be the same. (More seriously, as explained later, this oversight invites the parade of horribles that *Stanford* assiduously sought to avoid.)

The *Del Prado* court's misreading of *Stanford* is particularly odd in light of that same court's clear appreciation of *Stanford*'s limitations in another 5th Circuit case, *Home Port Rentals, supra.*, that factored heavily into *Del Prado*'s analysis. In *Home Port Rentals*, the 5th Circuit faced a situation similar to *Stanford;* the plaintiff had obtained a judgment in South Carolina in 1989, and, on the eve of that judgment's expiration under South Carolina law, registered it in Louisiana pursuant to 28 U.S.C. § 1963. Thereafter the creditor sought to execute against the debtor's property in Louisiana. Throughout *Home Port Rentals*' discussion (which concluded that, upon registration, Louisiana's statute of limitations, not South Carolina's, governed the registered judgment), the 5th Circuit takes pains to acknowledge the limited scope of *Stanford*: "registration truly is the equivalent of a new judgment of the registration court <u>for purposes of enforcement in the registration district</u>." 252 F.3d at 405 (emphasis in original). Indeed, *Home Port Rentals*, like *Stanford*, goes on to emphasize that, by equating a registered judgment to a domestic judgment for <u>enforcement</u> purposes in the registration state, it is not intending to represent that they are identical for all other purposes: "That the registered judgment might not be congruent with a new judgment of the registration court for every purpose other than enforcement – a possibility recognized in *Stanford* and elsewhere – is of no moment to the instant inquiry." *Id.*

Although it relies on *Home Port Rentals*, *Del Prado* overlooks the 5th Circuit's own prior

reasoning; it fails to acknowledge that prior precedent equates registered and domestic judgments only for purposes of enforcement in the state of registration. As a result, *Del Prado* mistakenly cites *Home Port Rentals* for the unqualified proposition that "a registered judgment has the same effect as a rendered judgment." 602 F.3d at 666.

But this oversight is compounded in *Del Prado*'s misunderstanding of *Home Port Rentals*. The court quotes, then ignores, then ultimately dismisses the limitation language of *Home Port Rentals* as "dicta." *Id.* at n. 8 (acknowledging defendants' argument that *Home Port Rentals* "limits the effect of registered judgments" to "enforcement within the district of registration" but finds that the *Home Port Rentals* court "was not concerned with successive registration" and thus, "we do not read the dicta of *Home Port Rentals* as a signal that a registered judgment could not be successively registered"). In actuality, the qualifying language of *Home Port Rentals* is the exact <u>opposite</u> of dicta. It is not a gratuitous observation by the court that is not essential to the decision; it is the court's own attempt to ensure that future readers do not extend the stated reasoning beyond the precise factual circumstances presented – the very error that *Del Prado* commits.

Cases such as *Stanford* and *Home Port Rentals* make clear that, although one might equate a registered judgment with a domestic judgment for purposes of enforcement in the state of registration, there is no particular reason to conclude that a registered judgment has all of the collateral features of a domestic judgment, such the ability to be (re-)registered in yet another jurisdiction. None of the cases cited in *Del Prado* stand for that particular proposition[6]; indeed,

---

[6]The remaining cases that principally inform *Del Prado*'s reasoning are *U.S. v. Febre*, 1992 WL 288321 (7th Cir. Oct. 15, 1992) (unpublished), a case in which the holder of a federal judgment from Ohio registered and sought to enforce it in Illinois, and *Marx v. Go Pub. Co.*, 721 F.2d 1272 (9th Cir. 1983), a case in which the holder of a federal District of Columbia judgment

11

as best this Court can determine, prior to *Del Prado*, the issue was one of first impression in the federal judiciary.[7] Having concluded that *Del Prado* incorrectly applied prior precedent, this Court proceeds to examine the issue presented here anew.

The final sentence of § 1963 provides that a registered judgment "shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." Cases such as *Stanford* and *Home Port Rentals* place a reasonable gloss on this language, explaining that the registered judgment should be treated as if it were a domestically-issued judgment, but only for purposes of execution in the registration state; in this sense, the registered judgment has "the same effect" as the domestic judgment and is "enforced in like manner." But, as those cases also wisely note, the statutory language does not compel the conclusion that a registered judgment is the equivalent of a domestic judgment for <u>all</u> purposes. Such proposition is facially inconsistent with the first sentence of § 1963 that limits the types of judgments that can be registered. To the extent that Congress intended to make registered judgments identical to original judgments in all instances, it could have so provided, either by

---

registered and sought to enforce it in California. No case cited by *Del Prado* involves a foreign judgment, registered in one state, and an attempted registration of the registered judgment in yet a third state.

[7] The Plaintiff has tendered a November 9, 2009 Opinion of the New York State Supreme Court for New York County in *Swezey v. Merrill Lynch,* Index No. 104734/09. In that case, the Plaintiff – another of the judgment creditors here – sought to execute the Illinois "judgment," now registered in New York, against the defendant in possession of Mr. Marcos' estate's assets. Among other things, the defendant argued that the action was precluded by the expiration of the Hawaii judgment. The court rejected that argument, finding that the judgment registered in New York was not the expired Hawaii judgment, but rather, the 2009 "revived' Illinois judgment. Concluding simply that the "NY-registered Illinois Judgment is enforceable under the full faith and credit clause," the court rejected the defendant's argument. This Court ascribes no persuasive value to *Swezey*, as the court there made no effort to address the complicated questions presented herein.

providing no restriction on the type of judgment that could be registered in the first sentence of § 1963 or by providing in the last sentence that a registered judgment shall become a judgment of the district court where registered.

There are many reasons why it is logical to differentiate registered judgments and domestic judgments for purposes of determining which can, in turn, be registered elsewhere. First, and perhaps most obviously, a rule equating registered and domestic judgments for all purposes allows judgment creditors to avoid any application of statutes of limitation and repose applying to judgments. Each state has promulgated laws deeming judgments of those states to expire after a given period of time, but serial registration of judgments makes a mockery out of those laws and the public policies underlying them. Here, the Plaintiff could have waited until the final day of the Hawaii statute of repose for judgments, and then registered the judgment in Illinois. By operations of cases such as *Stanford* and *Home Port Rentals*, that Illinois registration negates the Hawaii statute of repose on the judgment, and instead re-starts whatever period of repose Illinois has established. On the final day of <u>that</u> period, the Plaintiff could take the (registered) Illinois judgment to, say, Tennessee, and re-register it, thus obtaining a new statute of repose under Tennessee law. The practical effect is that no judgment could ever expire, and that creditors could simply cris-cross the nation, registering and re-registering their judgments in perpetuity. (Arguably, the circle could continue all the way back to Hawaii, creating the situation where the original judgment has expired under Hawaii law, but, because the Plaintiff took the judgment on a brief vacation to another state, the otherwise moribund original judgment can still be registered and enforced in Hawaii.)

Similarly, the Plaintiff's interpretation would create the possibility of a cascading

13

fountain of registered judgments - the domestic Hawaii judgment becomes an Illinois judgment upon registration in Illinois, which, in turn, becomes Colorado and Texas judgments when re-registered in those states; the Colorado judgment becomes a judgment of Idaho and Utah upon registration there, while the Texas judgment becomes a judgment of Florida upon registration there, etc. Eventually, a web of interlocking and recursive registrations, re-registrations, and re-re-registrations could result. Whatever uncertainties and difficulties arise from allowing a judgment in one jurisdiction to be registered and enforced in another will be magnified – potentially exponentially – when the registered judgment can, in turn, be re-registered and enforced elsewhere, independently of the original judgment. The complexity can be further compounded by the sale of certain judgments to different holders, all of whom may be seeking to collect against the assets of the judgment debtor.[8] Or, for the debtor whose assets are liquidated or who partially satisfies the original or registered judgment, there is no way to assure that all other judgments descending from the original reflect such partial satisfaction. Under the Plaintiff's version of the rule, a lengthy, imprecise, and potentially recursive untangling will be necessary, as a Georgia-registered judgment in dispute is traced back to a Vermont-registered judgment, which itself derived from a Virginia-registered judgment, which may be traceable to a <u>different</u> Georgia-registered judgment, etc.

Conversely, under a scheme in which only the original judgment can be registered, every registered judgment relates back to a single source by a single transaction. A party or court

---

[8]Imagine that, at the conclusion of the example given at the beginning of this paragraph, the Hawaii judgment has become "judgments" of Illinois, Colorado, Texas, Idaho, Utah, and Florida. If the Plaintiff sells the Colorado "judgment" to third-party A, and conveys the Utah judgment to third-party B in satisfaction of an obligation, all three "judgment" holders could then converge on the debtor's property in Florida, each claiming a right to enforce their "judgment" against the debtor.

14

having concerns about the validity of a registered judgment[9] need only trace back the matter one level – from the registration state to the original judgment. Satisfaction or partial satisfaction of the registered judgment can be reflected by a notation on the original judgment, supplying notice of partial satisfaction to anyone reviewing the registration of that original judgment in another jurisdiction. The mischief of recursive registration and judgment creation is not possible under a scheme that treats registered judgments and domestic judgments similarly for in-state enforcement purposes – thus satisfying the statutory requirements of § 1963 – but denies registered judgments the capability of being re-registered elsewhere.

There remains one final issue urged by the Plaintiff that requires some consideration. As the courts in *Stanford* and *Home Port Rentals* explain, the law has long recognized the notion of a "judgment on a judgment." Prior to § 1963, it was common for judgment creditors to commence suits in foreign jurisdictions, in order to obtain a "judgment on a judgment," which would then become a domestic judgment capable of being enforced in that jurisdiction. The Plaintiff argues that his Illinois judgment is just such a "judgment on a judgment," and points to the September 4, 2008 order of the Northern District of Illinois directing "entry" of judgment in favor of the Plaintiff pursuant to Fed. R. Civ. P. 58 as proof. This Court does not disagree with the general proposition that, theoretically, the Plaintiff could have gone to Illinois and commenced a civil action against Mr. Marcos' estate (assuming appropriate personal jurisdiction over the estate existed there), seeking an Illinois judgment declaring that Mr. Marcos was subject

---

[9]For example, if the judgment debtor contends that it was never served with process in the original action, and thus, the original judgment against him was obtained in the absence of personal jurisdiction, resort to the original record of proceedings may be necessary.

to the Hawaii judgment as relief.[10] In such an action, Mr. Marcos' estate would be given notice of the action, be entitled to raise defenses, and to contest the merits, among other things. *See e.g. In re Professional Air Traffic Controllers Organization*, 699 F.2d 539, 544 (D.C.Cir. 1983).

However, the record here does not reflect that the proceedings in Illinois were pursued in this manner. The record indicates that, on August 27, 2008, the Plaintiff simply filed a "Petition for Revival of Judgment" in Illinois. That document does not include a Summons, Certificate of Service, or any other indication that the Plaintiff gave notice to Mr. Marcos' estate of the request. The Northern District of Illinois granted the request on September 4, 2008, only eight days later, and included with its order is a direction "pursuant to FRCP 4(f)(3) that counsel for the plaintiffs shall serve the legal representatives of [Mr. Marcos' estate] with this Order." These circumstances indicate that Mr. Marcos' estate was not given advance notice of the Illinois proceeding, nor given the opportunity to be heard before the court revived the judgment. The lack of such notice and an opportunity to be heard prevents the Court from finding that the "revival" of the Illinois judgment is somehow equivalent to the Illinois court having duly

---

[10]This is what occurred in *Roche v. McDonald*, 275 U.S. 449, 450 (1928). There the plaintiff obtained a judgment against the defendant in Washington. Upon learning that the defendant then moved to Oregon, "Roche <u>brought suit against him upon this judgment</u>" in Oregon. *Id.* at 450 (emphasis added). The Oregon proceeding was typical, adversarial litigation: the defendant "was personally served with a summons, appeared, and . . . elected to plead no further" in the Oregon action. *Id.* The Oregon proceeding resulted in entry of a "judgment upon a judgment" in favor of the plaintiff in Oregon. Thereafter, the plaintiff "brought this suit against [the defendant], upon the Oregon judgment, in the superior court of Washington." *Id.* In other words, the plaintiff then brought a second "judgment upon a judgment" suit in Washington.

The Plaintiff here mistakenly asserts that *Roche* stands for the proposition that the "Supreme Court has approved the <u>successive transfer</u> of a judgment." (Emphasis added..) *Roche* simply recognizes that a party willing to bring a series of successive adversarial suits seeking a "judgment on a judgment" may do so, not that a party can accomplish the same result by successively registering judgments from one jurisdiction to the next.

16

adjudicated an adversarial proceeding and issued a "judgment on a judgment."[11]

For these reasons, as well as those set forth in the cogent and well-reasoned opinion of the Northern District of Texas in *Del Prado*, this Court finds that the Plaintiff cannot re-register the Illinois judgment in Colorado so as to support this action. Without a valid original judgment, duly-registered in Colorado, the Plaintiffs lack standing to bring this quiet-title action. Accordingly, Denman is entitled to dismissal of this action.

---

[11]Indeed, given the *ex parte*, state-law based procedural mechanism by which the Plaintiff proceeded in Illinois, it appears that the Illinois court was not authorized to "enter" any judgment against Mr. Marcos' estate under Rule 58. Under Illinois law, a proceeding to "revive" a dormant judgment is "to ensure its continuing validity in the eyes of the rendering court." *TDK Electronics Cor. v. Draiman*, 321 F.3d 677, 678 (7th Cir, 2003). The revival inquiry is simply "to determine whether the judgment has been satisfied in whole or part, so that if unsatisfied, the judgment creditor may preserve and enforce the judgment and its lien." Konig, Nichols' Illinois Civil Practice, § 77:2. Revival of a judgment under Illinois law is a procedural tool that "does not create a new judgment, but is a continuation of the judgment revived." *Id.*

At best, then, the Northern District of Illinois, in response to the Plaintiff's petition to revive the judgment, could only have ordered that the 1997 registered judgment was deemed "revived"; it had not jurisdiction to direct the "entry" of a new judgment against the Marcos estate under Rule 58. Although courts can collaterally void judgments that appear to have been entered without sufficient subject-matter jurisdiction, *Baella-Silva v. Hulsey*, 454 F.3d 5, 9 (1st Cir. 2006), this Court will not purport to void the Illinois "judgment," as Denman has not specifically asked for such relief and the record is not sufficiently complete to render such a determination. However, this Court's concerns as to the facial validity of the Illinois "judgment" effectively preclude the Court's willingness to rely on the Full Faith & Credit Clause of the Constitution or 28 U.S.C. § 1738 (statutorily implementing the clause) to give effect to that "judgment."

## CONCLUSION

Because the Court finds that no valid judgment is properly registered in Colorado, the Plaintiff cannot establish the key factual predicate of his claims. Accordingly, Denman's Motion to Dismiss **(# 11)** is **GRANTED**. The Clerk of the Court shall enter judgment in favor of Denman and close this case.

Dated this 23d day of September, 2010

BY THE COURT:

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
United States District Judge